1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY TAYLOR and ROBERT
SELWAY,

                Plaintiffs,

     v.

AMAZON.COM, INC.,

                Defendant.

CASE NO. No. 2:24-cv-00169-MJP

ORDER ON MOTION TO DISMISS

This matter comes before the Court on Defendant's Motion to Dismiss. (Dkt. No. 13.)
Having reviewed the Motion, Plaintiffs' Opposition (Dkt. No. 20), the Reply (Dkt. No. 21), and
all supporting materials, the Court GRANTS the Motion and DISMISSES the Complaint with
leave to amend within 30 days of this Order.

## BACKGROUND

Plaintiffs Jeffrey Taylor and Robert Selway claim the algorithm used by Defendant
Amazon.com., Inc. to determine which offers are prominently featured on the online marketplace
violates the Washington Consumer Protection Act, RCW § 19.86.010 ("CPA"). They claim that

the algorithm's preference for Amazon's own offers, or those offers for which Amazon provides

logistical support, deceives consumers into paying more for identical products. The Court

reviews the relevant facts.

Since 1994, Amazon has expanded from selling books to becoming the largest online

retailer in the United States. (Complaint ¶¶ 1, 20 (Dkt. No. 1).) It has done so via two avenues:

Amazon Retail and Amazon Marketplace. (Id. ¶ 2.) Amazon Retail is comprised of two parts:

goods produced by and sold through Amazon, such as Kindle e-readers and "Amazon Basics"

products, and through wholesale supplier partners, referred to as vendors. (Id. ¶¶ 21–23.)

Amazon Marketplace allows other retailers, referred to as "sellers," to sell products directly to

consumers on Amazon's retail platform, where they compete against Amazon Retail. (Id. ¶ 24.)

For the privilege of selling on Amazon Marketplace, sellers must pay Amazon fees,

including commissions, selling fees, advertising services, and any fees owed due to enrollment in

the Fulfilled By Amazon ("FBA") program. (Compl. ¶ 25.) FBA allows sellers to contract out

certain logistical elements of online retail, such as warehousing, packing, shipping, and handling

of returns, to Amazon. (Id. ¶¶ 27–30.) By all accounts, most successful Amazon sellers use FBA,

which has become a multi-billion-dollar venture for Amazon. (Id. ¶¶ 26, 29.)

When customers search for an item on Amazon, they are presented with a "Detail Page"

including a product description, pictures, dimensions, reviews, and, importantly for the purposes

of this lawsuit, a "Featured Offer" or "Buy Box" winner. (Compl. ¶¶ 35–38.) When more than

one seller offers the same product, Amazon selects a single offer—either from Amazon Retail or

from a third-party seller—for display in the "Buy Box." (Id. ¶ 39.) When an offer is selected for

display in (or "wins") the Buy Box, that offer's price is prominently displayed on the item page,

and shoppers may accept the offer immediately through a "Buy Now" button or may use a

1  different button to add the offered item to their shopping cart. (Id. ¶ 40.)



(Compl. ¶ 40.)

When an offer does not win the Buy Box, it is relegated to the "Other Sellers on

Amazon" section, which lists the lowest price among the relegated offers and cannot be bought

directly via a "Buy Now" button. (Compl. ¶¶ 42–43.) Unsurprisingly, some reports allege that up

to 98% of purchases made on Amazon Marketplace are made via the Buy Box. (Id. ¶¶ 41, 44.)

### A.    Allegations of Buy Box Deception

Plaintiffs allege that the Buy Box algorithm, or the methodology by which offers are

selected to win the Buy Box, are rigged in favor of Amazon Retail offers or offers from sellers

enrolled in FBA. (Compl. ¶ 50.) Plaintiffs rely on a 2021 report from the Italian Competition

Authorities, which found that the Buy Box algorithm looks at five factors when determining

which offer should win the Buy Box. (Id. ¶ 51). Plaintiffs allege that two of the five factors are

biased in favor of Amazon Retail or FBA offers. (Id.) The first factor is whether an offer

1  qualifies for Amazon Prime, a consumer subscription service that allows for free two-day

2  shipping. (Id. ¶¶ 32–34, 52.) Plaintiffs allege that FBA offers automatically qualify for Amazon

3  Prime, while non-FBA offers do not. (Id. ¶ 52.) The second factor is the seller performance

4  rating, which Plaintiffs allege does not apply to FBA offers, as those offers automatically receive

5  the "maximum value[] simply by virtue of being FBA offers." (Id. ¶ 53.)

6        Plaintiffs filed their Complaint on February 8, 2024, alleging that Amazon's use of the

7  Buy Box algorithm constitutes a deceptive practice under the CPA. (Dkt. No. 1.) They claim that

8  the biases in Amazon's Buy Box algorithm "deceptively preference[] offers from Amazon itself

9  and third parties that participate in FBA, even when there are lower prices on otherwise identical

10 offers from sellers that don't use FBA." (Compl. ¶ 55.) According to Plaintiffs, this deception

11 injured them and other members of a putative class by causing them to pay more for goods via

12 offers that won the Buy Box than they would have paid if Amazon did not use the biased

13 algorithm. (Id. ¶¶ 84–86.) They further note that this deception only came to light upon

14 investigation by European regulators in 2021–2022 (which is within the statute of limitations for

15 the single cause of action under the CPA). (Id. ¶¶ 59–69.) Plaintiffs do not identify any specific

16 purchase they would have made if not for Amazon's alleged deceptive practices, nor do they

17 identify any lower-priced items that they could have bought from other sellers.

18       Amazon moves to dismiss the Complaint, (Dkt. No. 13), specifically arguing that (1)

19 Plaintiffs' CPA claim is time-barred by the statute of limitations, and (2) Plaintiffs fail to allege

20 necessary elements of their CPA claim.

21

22

23

24

**ANALYSIS**

**A.    Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party and accept all well pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

**B.    Application of the Discovery Rule to Plaintiffs' CPA Claim**

Amazon first seeks dismissal on timeliness grounds, arguing that Plaintiffs' CPA claim falls outside of the four-year statute of limitations because Plaintiffs should have known of their injuries by 2018. The Court disagrees.

CPA claims are subject to a four-year statute of limitations, RCW 19.86.130, which "begin to run 'when a party has the right to apply to a court for relief,' or, alternatively, 'when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action.'" Pearse v. First Horizon Home Loan Corp., 742 F. App'x 167, 169 (9th Cir. 2018) (quoting Shepard v. Holmes, 185 Wn. App. 730, 739 (2014)). When a party should have

1   discovered a cause of action is "ordinarily a question of fact." <u>Green v. Am. Pharm. Co.</u>, 136

2   Wn.2d 87, 100 (1998).

3          The Complaint adequately alleges that Plaintiffs became aware of the basis for their

4   cause of action in 2021, after European regulators issued findings regarding Amazon's alleged

5   bias in the selection of the Buy Box offer, making the filing of the Complaint timely. As an

6   initial matter, the Complaint alleges that the claims are not time-bound under the "discovery

7   rule," because Plaintiffs could not have reasonably discovered the alleged deceptive conduct

8   until a 2021 regulatory investigation by European regulators. (Compl. ¶¶ 59–69.) The Complaint

9   acknowledges that "isolated reports in the press[] suggesting that Amazon appear[s] to favor

10  FBA sellers in the selection of the Buy Box winner," but claims that because those "reports did

11  not involve an investigation of Amazon's algorithm or other internal documents," they were "not

12  of the nature and kind that would have spurred reasonable consumers" to know the basis of a

13  CPA claim. (<u>Id.</u> ¶ 67.) The Complaint was therefore timely filed.

14         The Court disagrees with Amazon's argument that Plaintiffs could have discovered the

15  basis of their claims through on two separate sources of public information from 2018 and 2019.

16  The Court reviews both sources. First, Amazon represents that Plaintiffs were aware of three

17  online articles from 2018 and 2019. The first article, <u>How Amazon Rigs Its Shopping Algorithm</u>,

18  is cited numerous times in the Complaint. (Compl. ¶¶ 2 n.2, 18 n.45–46, 19 n. 48.) The two

19  remaining articles, <u>7 Steps to Winning the Amazon Buy Box in 2019</u> and <u>Why You Need the</u>

20  <u>Amazon Buy Box—And How to Get It</u>, are not cited in the Complaint, but do appear in a

21  separate class complaint filed by Plaintiffs' attorneys against Amazon. (Mot. at 13.) Amazon

22  faults Plaintiffs for failing to offer a "reason" why they "could not have learned through

23  reasonable diligence the same facts" relied upon in the separate class complaint. (Reply at 6.)

24

1   But the separate class complaint was filed in March 2020, which is within the statute of

2   limitations at issue here. See Frame-Wilson v. Amazon.com, Inc., No. 2:20-cv-00424-JHC,

3   Complaint, Dkt. No. 1 (W.D. Wash. Mar. 19, 2020).

4         Second, Amazon points to its own testimony in front of a congressional subcommittee on

5   October 11, 2019, as evidence that it publicly disclosed what factors other than item price it used

6   when selecting which offer was to be featured in the Buy Box. (Mot. at 8–9.) Plaintiffs note that

7   the testimony provided in that hearing contradicted itself. (Compl. ¶ 60.)

8         Neither source proffered by Amazon is sufficient to demonstrate that Plaintiffs should

9   have been aware of their claims prior to 2020. Plaintiffs rely on Avila v. Willits Environmental

10  Remediation Trust, 633 F.3d 828 (9th Cir. 2011), for the proposition that "some public

11  awareness of an issue through media coverage does not in and of itself trigger the discovery

12  rule." (Opp. at 12.) The Court finds the reasoning in Avila persuasive. In Avila, the trial court

13  granted summary judgment against toxic tort claimants on statute of limitations grounds. The

14  Ninth Circuit vacated that decision, finding that "[p]ublicity concerning the [toxic]

15  contamination and that it was likely the source of that injury must have been so pervasive as of

16  that date that the only reasonable inference is that Plaintiffs should have known the cause of their

17  injury." Id. at 842 (emphasis in original). The court noted that while there was some equivocal

18  information regarding the contamination and legal issues surrounding the [toxic] site, "very little

19  information indicated" that it could be the cause of the alleged injuries. Id. Like Avila, there was

20  very little information before February 2020 that would have alerted Plaintiffs to the alleged

21  injury. Two of the blog posts referred to by Amazon are written for a niche audience of Amazon

22  sellers; the third discusses the antitrust and competition considerations of the Buy Box, but

23  ultimately focuses on policy solutions. And, like the equivocal reports in Avila, the congressional

24

1    testimony contradicts itself by providing both "anecdotal evidence" from an Amazon seller

2    alongside testimony from Amazon itself claiming that "the same criteria [applies to Buy Box

3    selection] whether [the seller] is a third-party seller or Amazon." (Compl. ¶ 60.)

4        The Court therefore rejects Amazon's challenge to Plaintiffs' claims as untimely. The

5    Complaint includes well-pleaded allegations that Plaintiffs could not have reasonably learned of

6    their alleged injuries until the regulatory findings in 2020 and 2021, and what evidence Amazon

7    has produced to the contrary does not show otherwise.

8    **C.    Plaintiffs' CPA Claim**

9        The Court agrees with Amazon that the Complaint fails to adequately allege the fourth

10   (injury) and fifth (causation) elements required of Plaintiffs' CPA claim. The Complaint lacks

11   specific factual allegations necessary to draw a reasonable inference that Plaintiffs sustained a

12   cognizable injury under the CPA or that Amazon caused the injury. Because dismissal is

13   warranted on the fourth and fifth elements of Plaintiffs' CPA claim, the Court does not address

14   Amazon's challenge to the first CPA element (unfair or deceptive act) at this time.

15       "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act

16   or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a

17   person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166

18   Wn.2d 27, 37 (2009) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105

19   Wn.2d 778, 784 (1986)). "The CPA is to be 'liberally construed that its beneficial purposes may

20   be served.'" Panag, 166 Wn.2d at 37 (quoting RCW 19.86.920). "Failure to satisfy even one of

21   the elements is fatal to a CPA claim." Sorrell v. Eagle Healthcare, Inc., 110 Wn. App. 290, 298

22   (2002) (citing Hangman Ridge, 105 Wn.2d at 793).

23

24

1          **1.      Plaintiffs fail to adequately allege injury.**

2          Plaintiffs fail to show that they were "injured in his or her business or property." RCW

3    19.86.090. The Complaint only contains a threadbare allegation that the Plaintiffs "suffered an

4    injury in fact," due to Amazon's alleged conduct. (Compl. ¶ 86.) Outside of that recitation, the

5    Complaint is devoid of the type of "factual content that allows the court to draw the reasonable

6    inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 445 U.S. at 678, <u>see also</u>

7    <u>Cousineau v. Microsoft Corp.</u>, 992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012) ("In the absence

8    of more specific facts demonstrating that [plaintiff] or members of the purported class actually

9    sustained injury, [plaintiff's] claim under the CPA must fail."). Plaintiffs make no such

10   allegation that they suffered an actual, specific injury, which is fatal to their CPA claim.

11   Plaintiffs have not adequately shown that they made any specific transaction with Amazon, let

12   alone one from the Buy Box. Plaintiffs provide no information regarding specific orders (i.e.,

13   receipts), nor make allegations regarding discrete transactions with Amazon. And without a

14   showing of a specific transaction, Plaintiffs cannot possibly allege that they themselves were

15   overcharged for any particular purchase – which is the injury in dispute. (<u>See</u> Opp. at 23)

16   ("Plaintiffs' theory of harm is . . . that they overpaid for products purchased from the Buy

17   Box.").

18          Plaintiffs claim that they are entitled to a "reasonable inference of injury" based on their

19   allegations that they have been Amazon customers for the eight years during which Amazon has

20   "routinely overcharged consumers at the Buy Box." (Opp. at 23.) But Washington law requires

21   Plaintiffs to allege a "specific injury, reputational or otherwise, that has actually occurred" due to

22   Amazon's conduct, not a "mere possibility of injury." <u>Universal Life Church Monastery</u>

23   <u>Storehouse v. King</u>, No. 2:19-CV-00301-RSL, 2019 WL 2524993, at *3 (W.D. Wash. June 19,

24

2019) (dismissing CPA claims on injury and causation grounds). The sole case relied upon by Plaintiffs to support their reasonable inference theory, <u>Nemykina v. Old Navy, LLC</u>, 461 F. Supp. 3d 1054, 1060–61 (W.D. Wash. 2020), is unavailing. In <u>Nemykina</u>, the court found that the plaintiff's allegations, including that "<u>items she purchased</u> were not in fact worth the list[ed] prices," plainly alleged a specific harm under the CPA. <u>Id.</u> (emphasis added). In addition, the Court notes that the <u>Nemykina</u> complaint includes screenshots of specific purchases purportedly made in reliance of those advertisements. (<u>See</u> First Amended Class Action Complaint at Ex. A, <u>Nemykina v. Old Navy, LLC</u>, No. 2:19-cv-01958-BJR (W.D. Wash. Jan. 5, 2020), ECF. No 14.). Plaintiffs do not allege any specific purchases in which they were deceived via the Buy Box, let alone provide receipts.

The Court recognizes that Plaintiffs may be unable to ultimately prove that they overpaid for specific purchases: in Plaintiffs' lone example of a Buy Box screen, (<u>see</u> Compl. ¶ 40), the Featured Offer price of $11.37 for hand soap is significantly lower than the lowest priced offer—$14.05—listed from other sellers. But the CPA claim cannot proceed past the pleading stage without a specific allegation of injury. Given the lack of injury, the Court GRANTS Amazon's Motion to Dismiss.

### 2. Plaintiffs fail to adequately allege causation.

Plaintiffs also fail to allege specific facts related to causation. Proximate cause is a required element of a CPA claim. <u>See</u> <u>Hangman Ridge</u>, 105 Wn.2d at 793 ("A causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff."). The Complaint contains just one allegation causation allegation: "But for Amazon's deceptive conduct concerning the Buy Box algorithm, Plaintiffs and members of the Class would have purchased the lower priced offers from non-FBA sellers with equivalent or better delivery

times." (Compl. ¶ 88.) The Court agrees with Amazon that this naked recitation of proximate cause falls short of the Rule 12(b)(6) standard. See Twombly, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do."). This is particularly true because without an adequate allegation of a specific injury—a purchase and a lower-cost option— Plaintiffs fail to show causation under the CPA. In other words, Plaintiffs have not alleged that without Amazon's alleged deceptive or unfair practices "injury complained of . . . would not have happened" Schnall v. AT&T Wireless Servs., Inc., 171 Wn. 2d 260, 278 (2011) (quoting Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc., 162 Wn. 2d 59, 82 (2007)). Finding no alleged injury, see supra § C.1, the Court finds that Plaintiffs have not shown causation. For this additional reason, the Court GRANTS Amazon's motion to dismiss.

**CONCLUSION**

The Complaint includes well-pleaded allegations that Plaintiffs could not have reasonably learned of their cause of action until regulatory findings issued in 2020 and 2021. Despite blog posts and a congressional subcommittee record discussing the Buy Box, the Court finds that Plaintiffs' CPA claim is not barred by the statute of limitations. But, even construing the Complaint in Plaintiffs' favor, the Court finds that Plaintiffs failed to adequately allege specific injury or causation as part of their CPA claim. Therefore the Court GRANTS Amazon's Motion without prejudice. The Court GRANTS Plaintiffs leave to amend their Complaint within 30 days of this Order.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 8, 2024.

Marsha J. Pechman
United States Senior District Judge