UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY TAYLOR and ROBERT SELWAY,

Plaintiffs,

v.

AMAZON.COM, INC.,

Defendant.

CASE NO. No. 2:24-cv-00169-MJP

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

This matter comes before the Court on Defendant Amazon.com, Inc.'s Motion to Dismiss the First Amended Complaint. (Dkt. No. 44.) Having reviewed the Motion, Plaintiffs Jeffery Taylor's and Robert Selway's Opposition (Dkt. No. 45), the Reply (Dkt. No. 46), the Parties' presentations during oral argument (Dkt. No. 49), and all supporting materials, the Court GRANTS the Motion and DISMISSES the First Amended Complaint WITH PREJUDICE.

## BACKGROUND

**A.     Amazon Marketplace and Fulfilled by Amazon**

Since 1994, Amazon has expanded from selling books to becoming the largest online retailer in the United States. (First Amended Complaint (Dkt. No 35) ¶ 28.) It has done so through via two avenues: Amazon Retail and Amazon Marketplace. (Id. ¶ 5.) Amazon Retail is comprised of two parts: goods produced by and sold through Amazon, such as Kindle e-readers and "Amazon Basics" products, and through wholesale supplier partners, referred to as vendors. (Id. ¶ 29.) Amazon Marketplace allows other retailers, referred to as "sellers," to sell products directly to consumers on Amazon's retail platform, where they compete against Amazon Retail. (Id. ¶ 30.)

For the privilege of selling on Amazon Marketplace, sellers must pay Amazon fees, including commissions, selling fees, advertising services, and any fees owed due to enrollment in the Fulfilled By Amazon ("FBA") program (FAC ¶ 33.) FBA allows sellers to contract out certain logistical elements of online retail, such as warehousing, packing, shipping, and handling of returns, to Amazon. (Id. ¶¶ 36–38.) By all accounts, most successful Amazon sellers use FBA, which has become a multi-billion-dollar venture for Amazon. (Id. ¶¶ 34, 39.)

**B.     Amazon Search and the Buy Box**

Plaintiffs' amended allegations are still directed at Amazon's use of the "Buy Box," the FAC includes additional details regarding how customers engage with and make purchases through Amazon's marketplace.

When customers review a particular product offered for sale on Amazon, they are presented with a "Detail Page" including a product description, pictures, dimensions, reviews, and a "Featured Offer" or "Buy Box" winner. (Compl. ¶¶ 48.) When more than one seller offers

1    the same product, Amazon selects a single offer—either from Amazon Retail or from a third-

2    party seller—for display in the "Buy Box." (Id. ¶ 49.) When an offer is selected for display in (or

3    "wins") the Buy Box, the item's price is prominently displayed on the item page; shoppers can

4    accept the offer immediately through a "Buy Now" button or may use a different button to add

5    the offered item to their shopping cart. (Id. ¶¶ 50–51.) When an offer does not win the Buy Box,

6    it is relegated to the "Other Sellers on Amazon" section, which lists the lowest price among the

7    relegated offers and cannot be bought directly via a "Buy Now" button. (Id. ¶¶ 52–55.) The

8    following exemplar was provided by Plaintiffs in their original complaint (Dkt. No. 1 ¶ 40,) and

9    reproduced by the Court in its first order of dismissal, (Dkt. No. 33.):



21    Plaintiffs allege that Amazon's marketplace "is designed to highlight the Buy Box

22    winner and obscure the presence of other offers." (FAC ¶ 54.) They allege that shoppers must

23    often scroll down on a page to click on the "Other Sellers" box to review the additional non-Buy-

1   Box-winning offers. (<u>Id.</u> ¶ 55.) Similarly, Plaintiffs newly allege that the "Detail Page often

2   initially displays such that the 'Other Sellers' box is not even visible." (<u>Id.</u> ¶ 53.)

3         Customers may access Amazon's product listings via internet browsers or through a

4   dedicated Amazon shopping app. (FAC ¶ 45.) Customers may navigate Amazon's listings via a

5   search bar, which leads to a "search results page" that list the name, picture, price, other related

6   information for a variety of products related to the customer's query. (<u>Id.</u> ¶ 46.) Customers may

7   add products to their shopping cart directly from the results page. (<u>Id.</u> ¶ 47.) Plaintiffs allege that

8   because the search results page only shows information related to the Buy Box Winner,

9   customers can feasibly purchase an item without ever seeing the additional offers. (<u>Id.</u> ¶ 47.) The

10   FAC includes the following illustrative of the search results page:



22   (FAC ¶ 46.)

**C.    Allegations of Buy Box Deception**

Plaintiffs allege that the Buy Box algorithm, or the methodology by which offers are selected to win the Buy Box, are rigged in favor of Amazon Retail offers or offers from sellers enrolled in FBA. (FAC ¶ 64.) Plaintiffs rely on a 2021 report from the Italian Competition Authorities, which found that the Buy Box algorithm looks at five factors when determining which offer should win the Buy Box. (Id. ¶ 65). Plaintiffs allege that two of the five factors are biased in favor of Amazon Retail or FBA offers. (Id.) The first factor is whether an offer qualifies for Amazon Prime, a consumer subscription service that allows for free two-day shipping. (Id. ¶ 66.) Plaintiffs allege that FBA offers automatically qualify for Amazon Prime, while non-FBA offers do not. (Id.) The second factor is the seller performance rating, which Plaintiffs allege does not apply to FBA offers, as those offers automatically receive the "maximum value[] simply by virtue of being FBA offers." (Id. ¶ 67.)

Plaintiffs allege that "Amazon customers reasonably believe that the Buy Box . . . features the lowest-price offer for that item with equal or better shipping times," and "Amazon's Buy Box algorithm deceptively preferences offers from Amazon Retail even when a lower offer is available from an FBA seller with identical delivery and delivery reliability." (FAC ¶¶ 63, 69.) Plaintiffs' sole claim is that Amazon's use of the Buy Box algorithm constitutes an unfair or deceptive practice under the Washington Consumer Protection Act ("CPA"), RCW § 19.86.010. (Id. ¶¶ 127–29.) Plaintiffs, on behalf of themselves and a putative class, claim that this deception caused them to pay more for goods via offers that won the Buy Box than they would have paid if Amazon did not use the biased algorithm. (Id. ¶¶ 116, 132.)

The Court dismissed the complaint due to Plaintiffs' failure to adequately allege they made specific purchases from Amazon, and therefore could not show injury-in-fact or causation

1    under the CPA. (Dkt. No. 33.) Plaintiffs amended their complaint on August 7, 2024, and

2    Amazon again moves to dismiss with prejudice. (Dkt. No. 44.)

3    **ANALYSIS**

4    **A.**    **Incorporation-by-reference**

5    As an initial matter, the Parties dispute whether Amazon is permitted to incorporate-by-

6    reference a quote pulled from a blog that is referenced in the complaint. (<u>Compare</u> Mot. at 12 n.3

7    <u>with</u> Opp. at 9.) The contested passage is as follows:

8            [W]e evaluate all competing Amazon retail and third-party seller offers
and highlight the best offer for a product with a "Buy Now" button. We highlight

9            the offer we think customers would choose if they compared all offers in detail,
and we strive to only highlight offers when they're priced well.

10   (Mot. at 12 (quoting Amazon's Approach to Providing Customers Low Prices Every Day,

11   Amazon (Nov. 30, 2023) https://www.aboutamazon.com/news/retail/amazon-pricing (last visited

12   January 7, 2025).)

13        The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions

14   of documents that support their claims, while omitting portions of those very documents that

15   weaken—or doom—their claims." <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899 F.3d 988, 1002

16   (9th Cir. 2018). While "the mere mention of the existence of a document is insufficient to

17   incorporate the contents of a document," <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th

18   Cir. 2010), the court may consider documents "whose authenticity no party questions," <u>Knievel</u>

19   <u>v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005). This doctrine "applies with equal force to internet

20   pages as it does to printed material." <u>Id.</u>

21        The Court incorporates-by-reference the portion of the blog post quoted by Amazon. The

22   FAC cites to the blog in support of allegations that "Amazon customers reasonably believe that

23   the Buy Box . . . features the lowest-price offer." (FAC ¶ 63.) This is not an insignificant claim:

24

1    Plaintiffs' theory of unfair and deceptive conduct rests in part on what Amazon customers

2    "reasonably believe" the Buy Box represents. (See FAC ¶ 131 (alleging that "Amazon's unfair

3    and deceptive acts . . . were made for the purpose of inducing consumers to purchase from

4    Amazon itself," and that "consumers reasonably believed that the Buy Box displayed the lowest-

5    priced offers for a given item in Amazon's marketplace.").) The Court finds that the FAC does

6    "more than merely mention," the blog post, and therefore incorporates the portion cited by

7    Amazon in support of their Motion. Khoja, 899 F.3d 1004 (finding no abuse of discretion to

8    incorporate a blog post quoted once in a complaint).

9    **B.      Legal Standard**

10          Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

11   claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must

12   construe the complaint in the light most favorable to the non-moving party and accept all well

13   pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,

14   416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658,

15   661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts

16   to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

17   570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows

18   the court to draw the reasonable inference that the defendant is liable for the misconduct

19   alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must provide "more than

20   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

21   do." Twombly, 550 U.S. at 555.

22

23

24

1

**C.    Plaintiffs' CPA Claim**

2

"To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act

3

or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a

4

person's business or property, and (5) causation." <u>Panag v. Farmers Ins. Co. of Wash.</u>, 166

5

Wn.2d 27, 37 (2009) (citing <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105

6

Wn.2d 778, 784 (1986)). "The CPA is to be 'liberally construed that its beneficial purposes may

7

be served.'" <u>Id.</u> at 37 (2009) (quoting RCW 19.86.920.). Failure to satisfy even one of the

8

elements is fatal to a CPA claim. <u>Sorrell v. Eagle Healthcare, Inc.</u>, 110 Wn. App. 290, 298 (Wn.

9

App. 2002).

10

Amazon argues that the FAC fails to allege an actionable CPA claim for three reasons:

11

(1) that Plaintiffs fail to show that Amazon's use of the Buy Box is unfair or deceptive; (2)

12

Plaintiffs fail to show that they suffered any cognizable injury; and (3) Plaintiffs fail to show that

13

their alleged harm was caused by the challenged business practice. (Mot. at 4.) The Court

14

reviews each disputed element in turn.

15

**1.    Deceptive or Unfair Conduct**

16

"Whether a particular act or practice is 'unfair or deceptive' is a question of law." <u>Panag</u>,

17

166 Wn.2d at 47 (citing <u>Leingang v. Pierce County Med. Bureau, Inc.</u>, 131 Wn.2d 133, 150

18

(1997)). Plaintiffs allege that Amazon's practices are both unfair and deceptive. Because "an act

19

or practice can be unfair without being deceptive," the Court analyzes both allegations

20

separately. <u>Klem v. Washington Mut. Bank</u>, 176 Wn.2d 771, 787 (2013).

21

**a.    Deceptive Conduct**

22

Amazon argues that "the FAC fails to identify any practice that would deceive a

23

reasonable consumer." (Mot. at 5.) The Court agrees. Even with all reasonable inferences

24

construed in their favor, Plaintiffs fail to show how Amazon's practices could lead to customers

1    "reasonably believe[ing] that the Buy Box displayed the lowest-price offer for a given item in

2    Amazon's marketplace." (Compl. ¶ 131.)

3         "Deception exists if there is a representation, omission or practice that is likely to mislead

4    a reasonable consumer." <u>Panag</u>, 166 Wn.2d at 47 (citation omitted.) "A plaintiff need not show

5    the act in question was intended to deceive," nor must they "show that they—or anyone—were

6    in fact deceived," only that the "practice had the capacity to deceive a substantial portion of the

7    public." <u>Young v. Toyota Motor Sales, U.S.A.</u>, 196 Wn.2d 310, 317 (2020). Even a truthful

8    statement "may be deceptive by virtue of the 'net impression' it conveys." <u>Panag</u>, 166 Wn.2d at

9    50.

10         Plaintiffs' theory of deception is that Amazon has designed its marketplace "to highlight

11    the Buy Box offer and obscure the presence of other offers," which "create[s] the impression that

12    the Buy Box offer is the best . . . offer for a given product," for the purpose of "trick[ing]

13    consumers into spending more than they otherwise would for products sold." (Opp. at 12 (citing

14    FAC ¶¶ 9–10).) But Plaintiffs' theory dangles on an unsupported conclusion that the "best offer"

15    for all customers is the offer featuring the lowest price with an equal or better delivery time. (<u>See</u>

16    FAC ¶¶ 100, 104, 131–134.) This is a conclusory inference, which the Court need not accept as

17    true. <u>See</u> <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting <u>Sprewell v.</u>

18    <u>Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001)). And Plaintiffs' conclusion is

19    unfounded: Amazon does not claim that the Buy Box offer is the "lowest priced" offer for the

20    given product; rather it discloses that the featured offer is one which Amazon "think[s]

21    customers would choose if they compared all offers in detail," but only when those offers are

22    "priced well." (Mot. at 12.) This type of disclosure "do[es] not conceal" Amazon's use of criteria

23    outside of price and shipping speed to determine the featured offer, "but instead contemplate[s]

24

1   that very practice." <u>Gray v. Amazon.com, Inc.</u>, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023),

2   <u>aff'd</u>, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024).

3          But even if Plaintiffs' theory was more than a conclusory inference, the FAC fails to

4   adequately allege deceptive conduct. It is true that Amazon Marketplace prominently features the

5   Buy Box offer, and those offers that fail to "win" the Buy Box are relegated to the "Other

6   Sellers" section of the item detail page. But this is not deception; it is marketing. The way in

7   which Amazon highlights the Buy Box offer is no different than a retailer using the layout of its

8   shelves or in-store displays to promote one particular product while minimizing others. Just like

9   in a brick-and-mortar store, Amazon customers may peruse the digital "shelves" and compare

10  deals and items to find those which best fit their needs. (<u>See, e.g.</u>, Complaint (Dkt. No. 1) at ¶ 40

11  (showing the details page of a product listed for sale on Amazon's marketplace, allowing

12  customers to view offers in the "Other Sellers" box).) While Plaintiffs invoke modern fears of

13  algorithmic control and deceptive design, the Court finds that a reasonable consumer is no more

14  likely to be misled by Amazon's practices than they would be on a routine trip to the grocery

15  store.

16         To be sure, some marketing techniques can be deceptive. For example, techniques that

17  intentionally confuse customers into signing up for additional, unwanted goods or services have

18  been found to be deceptive practices under the CPA. <u>See</u> <u>Keithly v. Intelius Inc.</u>, 764 F. Supp. 2d

19  1257, 1266, 70 (W.D. Wash. 2011) (noting that deceptive practices "do[] not comport with

20  [customer] expectations" regarding online commerce, which "allows [them] to safely explore the

21  web, become informed about advertisement offers and complete transactions online.") However,

22  the marketing technique at issue here is "fairly straightforward" and non-deceptive: Amazon

23  "describes the offered [good], identifies the cost for each [good]" and then allows the customer

24

1  to purchase the item of their choice. Id. at 1263. Keithly is instructive. There, the court found that

2  the deceptive practices—including camouflaged terms and conditions—were "designed to foist

3  additional products or services on the consumer," resulting in a "substantial portion of the

4  population . . . not even aware that an offer has been made, much less accepted." Id. at 1269. But

5  here, nothing is foisted on the consumer other than the product they have selected for purchase.

6  And rather than "blend[ed] in" with other information, the Other Sellers box appears to be more

7  like a "key design element" informing consumers of the presence of different offers. Id. at 1267.

8       Plaintiffs argue that while the details page may display the availability and price of other

9  offers, customers can still be deceived if they add products to their carts directly from the search

10  results page which "displays only offers from Buy Box winners." (Opp. at 8, 13–14.) But the

11  FAC shows that the search result page does indeed inform customers of the availability and cost

12  of additional offers. (See FAC ¶ 46.) "[B]ased on Plaintiff[s'] chosen example . . . it cannot be

13  said that a reasonable consumer would fail to notice" the availability of other offers. In re

14  Amazon Serv. Fee Litig., No. 2:22-cv-00743-TL, 2024 WL 3460939, at *8 (W.D. Wash. July 18,

15  2024). And in any event, neither Plaintiff has alleged that they made purchases via the search

16  results page. (See FAC ¶¶ 88, 92, 97, 101 (listing four specific purchases made by Plaintiffs

17  "from Amazon Marketplace via the Buy Box").)

18       The Court finds that Plaintiffs fail to allege that Amazon's practices are deceptive under

19  the CPA. The Court now turns to Plaintiffs' allegations that Amazon's practices are unfair.

20         **b.**    **Unfair Conduct**

21       The CPA does not define the term "unfair." See RCW 19.86.010, .020. Thus, courts use a

22  number of tests to determine whether a practice is unfair under the act. See Klem, 176 Wn.2d at

23  785 (noting how the definition of unfair conduct has "evolve[d] through a gradual process of

24  judicial inclusion and exclusion.") There are currently two viable tests used to determine whether

conduct is unfair under the CPA: the "substantial injury test" and the "S&H test" <u>Greenberg v.</u>
<u>Amazon.com, Inc.</u>, 3 Wn.3d 434, 458 (2024), <u>as amended</u> (Aug. 16, 2024). The narrower
substantial injury test "provides an act or practice is 'unfair' when '[1] the act or practice causes
or is likely to cause substantial injury to consumers [2] which is not reasonably avoidable by
consumers themselves and [3] not outweighed by countervailing benefits to consumers or to
competition.'" <u>Id.</u> at 459 (quoting 15 U.S.C. § 45(n)). The S&H test is broader by virtue of
incorporating the substantial injury test, along with two additional factors: (1) whether "the
practice, without necessarily having been previously considered unlawful, offends public
policy," and (2) whether the practice is "immoral, unethical, oppressive, or unscrupulous." <u>Id.</u> at
455 (quoting <u>Fed. Trade Comm'n v. Wyndham Worldwide Corp.</u>, 799 F.3d 236, 243 (3d Cir.
2015)). The FAC contains no allegations that the Buy Box offends public policy or is somehow
immoral, unethical, oppressive, or unscrupulous. Therefore, the Court will assess Plaintiffs'
unfairness claims under the substantial injury test.

       Under the first prong of the substantial injury test, Amazon argues that Plaintiffs "do not
allege any real injury." (Mot. at 19–20.) The Court disagrees. An overcharge is "plainly a harm
under the CPA." (<u>See</u> Order of Dismissal (Dkt. No 33).) The allegations here claim that the
Plaintiffs were injured due to "pa[ying] higher prices on consumer goods and food items than
they otherwise would have." <u>Greenberg</u>, 553 P.3d at 641. Drawing all reasonable inferences in
favor of the Plaintiff, the Court finds that Plaintiffs have adequately pled that Amazon's practices
cause or are likely to cause a substantial injury.

       Second, Amazon argues that Plaintiffs cannot show that their practices are unfair under
the CPA because consumers can reasonably avoid the alleged harm by comparing the Buy Box
offer with those relegated to the Other Sellers box. (Mot. at 17.) The Court agrees and finds this

element fatal to Plaintiffs' unfairness claim. "In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice." F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1158 (9th Cir. 2010). "An injury is reasonably avoidable if consumers have reason to anticipate the impending harm and the means to avoid it, or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1168–69 (9th Cir. 2012) As discussed above, the Court finds that consumers have a free and informed choice to review the offers for a particular product and then have the means to avoid the harm by selecting a different offer or not purchase the product at all.

Plaintiffs argue that it is a factual question as to "how well-informed customers were" about the presence of the Other Sellers box. But the two case they cite in support of that argument are distinguishable. First, in F.T.C. v. Amazon.com, Inc., the court found that a "below the fold" warning that an app allowed for in-app purchases did "not mean Amazon customers made a free and informed choice to submit themselves to the risk of in-app purchases." 71 F. Supp. 3d 1158, 1166 (W.D. Wash. 2014). To be sure, the FAC alleges that "shoppers must scroll down the Detail Page" to click the Other Sellers box, but that is largely dependent on the device and display resolution employed by the shopper. And even then, that an online shopper is required to scroll down on a website or app page to review the item or offer they intend to purchase does not deprive them of a "free and informed choice" any more than would the requirement that they flip a cereal box over to review the ingredients. Second, Plaintiff's reliance on Greenberg is misplaced. There, the Court determined that plaintiffs alleging that Amazon had participated in "price gouging" during the COVID-19 pandemic could not reasonably avoid the harm because they had "no meaningful choice" to purchase necessary food and medicine other

than from Amazon given "product scarcity and their respective local government's directive to shelter in place." <u>Greenberg</u>, 3 Wn.3d at 462. In contrast, Plaintiffs here are provided with multiple offers—and a meaningful choice—for how they purchase a particular item.

The Court finds that Plaintiffs cannot adequately allege that the conduct at issue is deceptive or unfair under the CPA, and for this reason, the Court GRANTS Amazon's Motion to Dismiss.

### 2.    Injury

Amazon next argues that Plaintiffs' CPA claim must fail because they fail to plausibly allege any actual injury. (Mot. at 19.) Specifically, Amazon argues that Plaintiffs cannot show that they overpaid for a given offer because they "only provide factual allegations about price," and ignore other "key attributes" that may contribute to the value of an offer, which "undermines Plaintiffs' assertion that the offers . . . were equivalent in value to what they bought." (<u>Id.</u> at 19– 20.) The Court disagrees. At this stage, Plaintiffs satisfy the injury prong of the CPA by alleging that they actually spent money they would otherwise would not have spent. <u>See</u> <u>Nemykina v. Old Navy, LLC</u>, 461 F. Supp. 3d 1054, 1061 (W.D. Wash. 2020). The arguments raised by Amazon—what value Plaintiffs have placed on non-price, non-shipping speed attributes—are factual disputes that cannot be decided on a motion to dismiss. The Court therefore DENIES Amazon's Motion as to the injury prong of the CPA.

### 3.    Causation

Last, Amazon argues that Plaintiffs "fail to allege specific facts to establish a causal link between Amazon's alleged conduct and Plaintiffs' choice to purchase the Featured Offer." (Mot. at 23.) The Court disagrees.

To establish the causation element in a CPA claim, Plaintiffs must establish that, but for the Amazon's unfair or deceptive practice, they would not have suffered an injury. <u>Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.</u>, 162 Wn.2d 59, 83 (2007). The FAC includes allegations that the Plaintiffs made specific purchases, "reasonably expected that the Buy Box displayed the best offer for a given product," and would have selected a "better offer" if they knew one was available. (FAC ¶¶ 91, 95, 100, 104.) The FAC further alleges that this "overpayment [was] caused by Amazon placing higher priced offers in the Buy Box and thereby obscuring lower priced offers for the same product . . ." and claims that "[b]ut for Amazon's deceptive conduct" Plaintiffs would not have been so harmed. This is not the same type of "naked recitation of proximate cause" that justified the dismissal of the original complaint. (<u>See</u> Dkt. No. 33.) The Court therefore DENIES Amazon's Motion as to the causation prong of the CPA.

## CONCLUSION

Plaintiffs have not alleged, and cannot allege, facts to state a plausible claim that Amazon's Buy Box is deceptive or unfair. Plaintiffs cannot show how Amazon's marketing techniques, which are similar to those employed by retailers throughout the country, can deceive a substantial portion of consumers. Nor can Plaintiffs show that those practices are unfair given that consumers are provided the free and informed choice regarding competing offers. Regardless of further amendment, the underlying conduct is not deceptive or unfair. Therefore, the Court GRANTS Amazon's Motion. The FAC is DISMISSED WITH PREJUDICE.

The clerk is ordered to provide copies of this order to all counsel.

//

//

Dated January 15, 2025.

Marsha J. Pechman
United States Senior District Judge